UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 21 Cr. 2165 _____     _____ Caption [use short title] _____

Motion for: Summary Affirmance _____

_____

_____

Set forth below precise, complete statement of relief sought:

For summary affirmance of the conviction and sentence _____

because there are no non-frivolous issues _____

_____     United States of America v. Lambrakis

_____

_____

_____

MOVING PARTY: United States of America _____   OPPOSING PARTY: _____

☐ Plaintiff     ☐ Defendant

☐ Appellant/Petitioner     ☑ Appellee/Respondent

MOVING ATTORNEY: Damian Williams, U.S. Attorney, Southern District of New York   OPPOSING ATTORNEY: Peter E. Brill, Esq.

[name of attorney, with firm, address, phone number and e-mail]

By: Sarah Mortazavi, Assistant U.S. Attorney _____   Brill Legal Group, P.C. _____

One Saint Andrew's Plaza, New York, NY 10007 _____   306 5th Avenue, New York, NY 10001 _____

(212) 637-2520; Email: sarah.mortazavi@usdoj.gov _____   888-315-9841; Email: pbrill@brill-legal.com _____

Court- Judge/ Agency appealed from: The Honorable Katherine P. Failla, United States District Judge, Southern District of New York

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☑ Unopposed   ☐ Opposed   ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☑ No   ☐ Don't Know

Is oral argument on motion requested?   ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes  ☑ No  If yes, enter date: _____

Signature of Moving Attorney:
_~~signature~~_ Date: 6/24/2022   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes  ☐ No
Has this relief been previously sought in this court?   ☐ Yes  ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

UNITED STATES OF AMERICA,        :      **<u>AFFIRMATION</u>**

          *Appellee*,       :

                              :      Docket No. 21 Cr. 2165

        - v. -          :

                              :

Emmanuel Lambrakis,         :

                              :

         *Defendant-Appellant*,   :

                              :

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK            )
COUNTY OF NEW YORK         :      ss.:
SOUTHERN DISTRICT OF NEW YORK   )

      Sarah Mortazavi, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty

of perjury:

      1.     I am an Assistant United States Attorney in the Office of Damian

Williams, United States Attorney for the Southern District of New York, and I

represent the Government in this appeal. I submit this affirmation in support of the

Government's motion for summary affirmance of defendant-appellant Emmanuel

Lambrakis's conviction and sentence because there are no non-frivolous issues that

can be raised on appeal.

## PRELIMINARY STATEMENT

2.      Lambrakis appeals from a judgment of conviction entered on September 9, 2021, in the United States District Court for the Southern District of New York, by the Honorable Katherine P. Failla, United States District Judge, following Lambrakis' guilty plea.

3.      On April 3, 2017, Indictment 17 Cr. 208 (WHP) (the "Indictment") was filed charging Lambrakis in one count with conspiring to distribute oxycodone, in violation of 21 U.S.C. § 846.

4.      On March 1, 2018, Lambrakis appeared before the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, and pleaded guilty to the Indictment without the benefit of a plea agreement. On February 19, 2019, Lambrakis moved *pro se* to withdraw his guilty plea, which had not then been accepted by the district judge then presiding over his case, the Honorable William H. Pauley. Judge Pauley granted Lambrakis's motion to withdraw his plea and trial was scheduled to begin on December 2, 2019.

5.      On November 26, 2019, Lambrakis appeared before Judge Pauley and pleaded guilty a second time without the benefit of a plea agreement.

6.      On June 24, 2021, the matter was reassigned to Judge Failla. On August 26, 2021, Judge Failla sentenced Lambrakis to 188 months' imprisonment, to be

followed by three years' supervised release, and ordered Lambrakis to pay forfeiture of $3,093,000 and a $100 mandatory special assessment.

7.     On September 9, 2021, Lambrakis filed a timely notice of appeal.

8.     On March 28, 2022, Lambrakis's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that after reviewing the record, counsel had concluded that there are no meritorious or non-frivolous issues to be raised on appeal.

9.     Lambrakis is currently serving his sentence.

## STATEMENT OF FACTS

### A.     The Offense Conduct

10.     Lambrakis, a then-licensed medical doctor, led a five-year scheme in which he issued thousands of illegal, medically unnecessary prescriptions for millions of highly-addictive oxycodone pills to addicts and dealers in the New York City area. (PSR ¶ 14; A. 198).[1] Lambrakis perpetrated his scheme under the auspices of providing treatment as a medical doctor, when, in actuality, his medical practice was used as cover to issue vast amounts of oxycodone prescriptions without any valid medical basis, in exchange for cash payments of approximately $150 per

---

[1] "PSR" and "Presentence Report" refer to the final Presentence Investigation Report prepared by the U.S. Probation Office ("Probation Office") in connection with Lambrakis's sentencing, dated January 17, 2020; "Br." refers to the brief that Lambrakis's appellate counsel filed pursuant to *Anders v. California*, 386 U.S. 738 (1967); and "A." refers to the appendix filed with that brief.

oxycodone prescription. (PSR ¶ 14; A. 198). The dosage and amount of oxycodone prescriptions Lambrakis issued, coupled with the sheer volume of patients Lambrakis "examined," reflect that Lambrakis, far from operating a medical clinic, was running a "pill mill." (PSR ¶¶ 15, 17, 19, 21, 30; A. 202). He was neither careless in his prescribing practices, nor was he genuinely treating patients for chronic pain. (PSR ¶¶ 20-30; A. 202-03). In a single day in 2016, Lambrakis issued prescriptions for 30mg of oxycodone to 168 individuals, and issued prescriptions for other narcotics to an additional 7 individuals, totaling at least 175 patients "examined" that day. (PSR ¶ 17; A. 203). On that date alone, Lambrakis caused 19,350 30mg oxycodone pills to be dispensed. On five additional occasions, Lambrakis issued over 100 oxycodone prescriptions in a single day. (PSR ¶ 17; A. 203).

11.    Lambrakis's cursory examinations of patients, sometimes performed in mixed-gender groups, and his disregard for red flags, such as when patients' family members alerted Lambrakis that patients were addicts and did not require oxycodone for pain, were all further corroboration of the illegality of Lambrakis's practices, and Lambrakis's consciousness of guilt. (PSR ¶¶ 20-30; A. 204-08).

12.    Over the course of the scheme, Lambrakis distributed medically unnecessary—and therefore illegal—oxycodone prescriptions that amounted to *at least* between 10,000 to 30,000 kilograms of marijuana equivalence. (PSR ¶ 42; A. 349). Lambrakis maintained his medical practice for the purpose of distributing

medically unnecessary oxycodone through the guise of providing *bona fide* medical care and valid oxycodone prescriptions and Lambrakis managed the criminal activities in his so-called medical practice. (PSR ¶ 14; A. 350).

## B. The Parties' Stipulation and the Guilty Plea

13. On March 1, 2018, Lambrakis pleaded guilty before Magistrate Judge Gorenstein, before successfully withdrawing his plea in February 2019. (A. 112-130, 154-55). Given that Lambrakis moved to withdraw his plea on the eve of sentencing, the Probation Office had prepared a Presentence Investigation Report calculating a total Guidelines range of 324 to 406 months' imprisonment based on offense level 41 and Criminal History Category I, that resulted in a Guidelines sentence of 240 months' imprisonment based on the statutory maximum sentence. (A. 45, 155).

14. Following Lambrakis's withdrawal of his guilty plea, the parties prepared to proceed to trial. Within days of the scheduled trial date, on November 26, 2019, Lambrakis pleaded guilty before Judge Pauley; once again, he did so without the benefit of a plea agreement. (A. 131-57).

15. Before accepting Lambrakis's guilty plea, Judge Pauley conducted a careful allocution that complied with Rule 11 of the Federal Rules of Criminal Procedure. (A. 131-57).

16. Judge Pauley established that Lambrakis was competent to plead guilty and confirmed that Lambrakis had discussed his case with his attorney, including

the consequences of entering a guilty plea, and was satisfied with his attorney's representation. (A. 134-138).

17.     Judge Pauley next established that Lambrakis understood the rights he was giving up by pleading guilty, including his rights: (a) to a jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (b) to the assistance of appointed counsel at trial and at all stages of the proceedings; (c) to confront and cross-examine witnesses; (d) to testify, present evidence, and compel the attendance of witnesses; and (e) against compelled self-incrimination. (A. 138-140). Lambrakis stated that he understood these rights and was willing to waive them. (A. 140).

18.     Judge Pauley reviewed the charge in the Indictment with Lambrakis and directed the Government to set forth the elements of the offense charged in the Indictment and the Government did so. (A. 140-144). Judge Pauley then confirmed that Lambrakis understood the maximum statutory penalties he would face as a result of his guilty plea. (A. 145-146).

19.     Judge Pauley confirmed that Lambrakis understood that, in determining the appropriate sentence, the District Court was required to consider the Guidelines and other factors pursuant to Title 18, United States Code, Section 3553(a). (A. 147). Judge Pauley established that Lambrakis understood that "[N]o one . . . not even your attorney or the government can, or should, give you any assurance of what your

sentence will be," that the sentence would be based on what the District Court "believe[s] is appropriate giving due regard to all of the factors set forth in Section 3553(a)," and that the District Court was "completely free to disregard any position or recommendation by [Lambrakis's] attorney or by the government as to what your sentence should be, and that [the District Court has] the ability to impose whatever sentence [the Court] believe[s] is appropriate under the circumstances . . . ." (A. 147-148). Judge Pauley also confirmed that no one had threatened or induced Lambrakis in any way to plead guilty. (A. 147, 148).

20.     Judge Pauley ensured that an adequate factual basis supported Lambrakis's plea. Judge Pauley asked Lambrakis to describe what he did that made him guilty. (A. 148-149). Lambrakis stated, in sum and substance, that between 2011 and 2016, on at least one occasion, he agreed with his patients to prescribe oxycodone outside the course of professional practice, and that he understood his actions were illegal. (A. 149-151). Judge Pauley asked for a summary of the Government's evidence, which the Government provided. (A. 150-151).

21.     Lambrakis then pleaded guilty to the Indictment. (A. 154). Judge Pauley confirmed that Lambrakis was pleading guilty voluntarily and of his own free will. (A. 154).

22.     Judge Pauley found that Lambrakis understood his rights and waived them knowingly and voluntarily, and that an adequate factual basis supported the

plea. (A. 155). Accordingly, Judge Pauley accepted Lambrakis's guilty plea. (A. 155).

## C.    The Sentencing

23.    Prior to Lambrakis's then-scheduled sentencing proceeding, the Probation Office prepared the final Presentence Report, which calculated a total Guidelines range of 360 months' to life imprisonment based on offense level 42 and Criminal History Category I, which once again resulted in a Guidelines sentence of 240 months' imprisonment based on the statutory maximum for the offense. (PSR ¶ 46; A. 200, 382). While the Government agreed with the Guidelines calculation in the final Presentence Report, Lambrakis argued that the applicable Guidelines range was 0-6 months' imprisonment. (A. 164). Given the gulf between the parties' respective positions, Judge Pauley ordered a *Fatico* hearing.

24.    Prior to any *Fatico* hearing, the parties entered into a stipulation in which Lambrakis expressly "recognize[d] and acknowledge[d] that his sentence . . . may be as high as 240 months' imprisonment, which is the maximum term of imprisonment permitted by law for the offense of conviction." (A. 351). With respect to calculating the applicable Guidelines range, Lambrakis stipulated that: (1) pursuant to U.S.S.G. § 2D1.1(c)(3), the applicable base offense level was "no lower than 34" based on the quantities of oxycodone he illegally distributed as part of the offense; (2) a two-point enhancement applied based on his maintenance of a

8

premises for the purposes of distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12); (3) a further two-point enhancement applied due to his role as an organizer, leader, manager, or supervisor in criminal activity pursuant to U.S.S.G. § 3B1.1(c); and (4) a two-point reduction to his offense level was applicable based on Lambrakis's acceptance of responsibility, pursuant to USSG § 3E1.1. (A. 349-50). Consequently, Lambrakis agreed that the applicable Guidelines Range was no less than 188 to 235 months' imprisonment, while the Government and Probation Office continued to advocate that the applicable Guidelines was a 240-month sentence. (A. 374). The parties further stipulated that any sentence to be imposed on Lambrakis would be determined solely by the District Court, which would "make its own independent determination as to the appropriate Guidelines range in this matter" and that the stipulation was "not binding on the Court or the Probation Department." (A. 350).

25.     Lambrakis appeared for sentencing on August 26, 2021, before Judge Failla, to whom the case had been reassigned.  The sentencing proceeding complied with Rule 32 of the Federal Rules of Criminal Procedure.

26.     At sentencing, Lambrakis reaffirmed that he did not intend to depart from, or contest, the factual stipulation. (A. 389). During the proceeding, Lambrakis and his attorney conferred regarding the final Presentence Report, after which Lambrakis directly represented to Judge Failla that he had refreshed himself on the

final Presentence Report, and that he only objected insofar as the final Presentence Report departed from the parties' factual stipulation. (A. 394-95).

27.     The parties informed Judge Failla that they had reached a stipulation as to forfeiture in the amount of $3,093,000.  (A. 402).  The Government explained that this number was the product of the number of oxycodone prescriptions over the entire charged conspiracy period of 30 milligram strength only, times $150.  (A. 403).

28.     Judge Failla heard arguments from counsel with respect to the appropriate sentence. The Government argued for a sentence at the statutory maximum term of imprisonment to provide just punishment, promote respect for the law, and achieve general deterrence. (A. 424). Lambrakis's counsel, having filed a written submission advocating for a sentence of time served (A. 353-63), argued the same at sentencing. Defense counsel emphasized that Lambrakis's history and characteristics counseled in favor of a time-served sentence, noting Lambrakis's advanced age and his medical and psychological issues. (A. 425-28, 434-35). Defense counsel discussed the results of a competency examination that Lambrakis had undergone, the results of which confirmed that "Dr. Lambrakis is competent" and "doesn't suffer from a mental illness." (A. 432). Defense counsel noted that his request for a time-served sentence "is an extraordinarily large departure, from both the guidelines and the government's recommendation, but we believe that an

appropriate sentence would be a sentence of . . . home confinement and supervised release." (A. 435). Judge Failla addressed Lambrakis, stating, "as I am sure you know, your attorneys have done a tremendous job in presenting your case to me." (A. 436).

29.     Lambrakis addressed the District Court directly, stating that he "violated" the oath he had taken in medical school "to protect the public and individual health by not engaging in harmful conduct." (A. 436-37). Lambrakis further stated that he took "full responsibility" for his actions and expressed his "deepest apologies and regret." (A. 437).

30.     Before imposing sentence, Judge Failla noted that she had "carefully considered" the sentencing factors under 18 U.S.C. § 3553(a). (A. 438-39). Judge Failla explained that she would not adopt the Guidelines calculation advocated by the Probation Office or the Government, and that she was "ultimately satisfied that adopting the guidelines stipulations of the parties are sufficient in this case." (A. 439). The District Court then expressly adopted Lambrakis's Guidelines calculation of 188 to 235 months' imprisonment, as well as the factual statements in the Presentence Report. (A. 440).

31.     Judge Failla referred to the careful attention she had paid to the parties' submissions and oral advocacy, noting that because she was not "involved from the outset" but had been reassigned the case, she "spent a lot of time with" the sentencing

materials. (A. 440-41). In explaining the sentence she intended to impose, Judge Failla stated that Lambrakis's crime was "among the worst offense conduct [she had] seen in a while. . . . it is quite terrible for all the reasons that you know," including because Lambrakis "completely abdicated his professional responsibilities." (A. 441). Judge Failla added, "I don't see how Dr. Lambrakis could not have understood the damage he was causing and the mischief he was bringing about by offering quite so many prescriptions. . . . So in terms of the offense conduct, it is quite significant and egregious and worthy of punishment." (A. 442). Judge Failla likewise described the mitigating factors she had taken into consideration, including Lambrakis's mental health issues, his service to the community, and the patients he did help as a medical professional, but concluded that a "stiff sentence" was warranted in light of all the Section 3553(a) factors. (A. 443-44).

32.     Judge Failla imposed a sentence of 188 months' imprisonment, a term of supervised release of three years, forfeiture in the amount of $3,093,000, and a $100 special assessment. (A. 444-45). The District Court declined to impose a fine. (A. 445).

## ARGUMENT

### Lambrakis's Conviction and Sentence Should Be Summarily Affirmed Because There Are No Non-Frivolous Issues to Be Raised on Appeal

33.     Summary affirmance is warranted because there are no non-frivolous issues to be raised on appeal. Lambrakis's appellate counsel advised, in a submission

pursuant to *Anders v. California*, 386 U.S. 738 (1967), that "[i]t is apparent from a review of the facts and the law that there are no issues which can be raised on this appeal which are not frivolous." (Br. 25). The Government agrees that none exist.

## A. Lambrakis's Guilty Plea Was Knowing and Voluntary

34. There are no meritorious or non-frivolous issues Lambrakis could raise in connection with his guilty plea. Lambrakis's plea proceeding before Judge Pauley complied with Rule 11 of the Federal Rules of Criminal Procedure. Judge Pauley ensured that Lambrakis was competent to enter a guilty plea (A. 134-38); ensured that Lambrakis was aware of all the rights he was giving up by pleading guilty (A. 138-148); informed Lambrakis of the nature of the charge that was pending against him and of the maximum penalties he faced upon conviction (A. 141-45); and determined that there was an adequate factual basis for Lambrakis' guilty plea (A. 148-50). Moreover, Lambrakis entered the guilty plea of his own volition. (A. 147-48). In addition, his guilty plea before Judge Pauley was the second such attempt by Lambrakis to plead guilty; he had, thus, twice been advised of the rights he would be abdicating by pleading guilty, on two separate occasions, by two different judges and, on both occasions was found competent to enter a change of plea. (A. 34-41). As Lambrakis's appellate counsel concludes, Lambrakis cannot validly claim that his plea was not knowing and voluntary, and there are no meritorious or non-frivolous issues concerning Lambrakis's guilty plea.

**B.  Lambrakis's Sentence Was Procedurally and Substantively Reasonable**

35.  There are no meritorious or non-frivolous issues that Lambrakis could raise in connection with sentencing. Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court "commits procedural error where it fails to calculate the Guidelines range (unless the omission of the calculation is justified), makes a mistake in its Guidelines calculation, [ ] treats the Guidelines as mandatory[,] . . . does not consider the Section 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *Id.* at 190; *see also Gall v. United States*, 552 U.S. 38, 51 (2007).

36.  If the Court determines that there was no procedural error, it "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. The Court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190; *see also United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). This Court has noted that the substantive unreasonableness standard "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise

14

unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

37. Lambrakis's sentence was procedurally reasonable. First, the sentencing proceeding complied with Rule 32 of the Federal Rules of Criminal Procedure, and thus the sentence was not imposed in violation of law. Second, Judge Failla calculated Lambrakis's Guidelines range consistent with the parties' stipulation regarding the facts and offense level calculations. (A. 350-51, 339). Judge Failla's calculation was based on the District Court's adoption of the uncontested facts to which Lambrakis stipulated, and fell below the 240-month Guidelines Sentence calculated by the Probation Office and the Government. Before imposing sentence, Judge Failla carefully considered Lambrakis's sentencing submission, defense counsel's arguments, Lambrakis's statements in open court, and the relevant factors set forth in 18 U.S.C. § 3553(a). (A. 436, 440-41). The forfeiture amount imposed by the District Court was agreed upon by the parties and well supported by the facts. (A. 402-03).

38. The sentence was also substantively reasonable. Judge Failla considered the arguments made by both sides and the information provided by the parties, including regarding the seriousness of Lambrakis's crime, his advanced age, his mental and physical ailments, and the support of his family and community. (A. 339-444). She reasonably concluded that a sentence at the bottom of the Guidelines

range was warranted in light of the "terrible" and "egregious" nature of the offense conduct, where Lambrakis "completely abdicated his professional responsibilities," "prescribed extraordinary quantities of oxycodone to basically all patients who walked in the door," and must have "understood the damage he was causing . . . by offering quite so many prescriptions." (A. 441-42). In these circumstances, a sentence at the bottom of the calculated Guidelines range predicated upon the parties' factual stipulation is not substantively unreasonable. *Cf. United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (explaining that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances").

39.    Because Lambrakis's sentence was lawful and both procedurally and substantively reasonable, there are no meritorious or non-frivolous issues for Lambrakis to raise on appeal with respect to his sentence.

## C.    Lambrakis Received Effective Assistance of Counsel

40.    Finally, Lambrakis cannot make a non-frivolous claim of ineffective assistance of counsel on direct appeal. As shown in the record, defense counsel represented Lambrakis' interests with vigor at every stage of the proceedings. Defense counsel's performance cannot be said to have fallen below "an objective standard of reasonableness" under "prevailing professional norms," and Lambrakis

16

cannot demonstrate prejudice from the representation he received, nor does he so assert. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

41.    Lambrakis stated at the time of his plea that he was satisfied with his attorney's representation. (A. 36). That satisfaction was well earned. Lambrakis's attorneys ably represented him up to the brink of trial, having ordered a competency examination (A. 432), engaged in extensive pre-trial motions practice (Dkt. Nos. 92, 96), and reviewed 3500 material with Lambrakis, precipitating Lambrakis's plea of guilty to Count One of the Indictment (A. 199-200). Thereafter, defense counsel prepared diligently for a *Fatico* hearing, including by designating an expert witness to testify in Lambrakis' defense. (*See* Dkt. No. 122). Ultimately, and perhaps given that Lambrakis' anticipated expert witness "also would have agreed that [his conduct] does not rise to the appropriate level of [medical] care" (A. 429), rather than pursue a *Fatico*, defense counsel entered into a factual stipulation with the Government.

42.    Lambrakis's attorney also achieved a favorable result at sentencing. Judge Failla adopted Lambrakis's proposed Guidelines range of 188 to 235 months' imprisonment, rather than agreeing with the Government and Probation Office that a Guidelines sentence would be 240 months' imprisonment.  (A. 439-440).  Judge Failla then imposed a sentence at the low end of Lambrakis's proposed range of 188 months' imprisonment, rather than a sentence of 240 months' imprisonment

advocated by the Government—a difference of approximately 4 years' imprisonment. (A. 444-45). Further, Judge Failla declined to impose any fine. Prior to imposing sentence, Judge Failla specifically noted that Lambrakis's attorneys had "done a tremendous job in presenting" the case to Judge Failla at the sentencing phase (A. 436), and separately "thank[ed] counsel for both sides both for excellent written presentations and excellent oral presentations" (A. 440).

43.     Furthermore, Lambrakis cannot establish prejudice because, not only did he receive a sentence within the Guidelines range he stipulated applied, he has not even asserted that, but for any purported ineffectiveness, he would have proceeded to trial. *See United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) ("To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.").

44.     In these circumstances, it would be difficult to perceive how Lambrakis's counsel could possibly have rendered ineffective assistance, and to the extent a claim could be raised, it should be done through a motion under 28 U.S.C. § 2255, not direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

18

## CONCLUSION

45.     For the foregoing reasons, Lambrakis's conviction and sentence should

be summarily affirmed because there are no meritorious and non-frivolous issues on

appeal.

Dated:      New York, New York
            June 24, 2022

                              /s/_____
                              Sarah Mortazavi
                              Ryan Finkel
                              Assistant United States Attorneys
                              Telephone: (212) 637-2348 / 6612

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 4,009 words in this motion.

> Damian Williams
> United States Attorney for the
> Southern District of New York
>
> /s/ Sarah Mortazavi
> By:   Sarah Mortazavi
> Assistant United States Attorney
> (212) 637-2348